794 P.2d 389

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Pablo MACIAS, Defendant–Appellant.**

**No. 11100.**

Court of Appeals of New Mexico.

April 26, 1990.

Certiorari Denied June 6, 1990.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Mario A. Esparza, Las Cruces, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals his convictions of criminal sexual penetration of a child under the age of thirteen and criminal sexual contact. Defendant raises five issues on appeal. His first contention is that the district court erred in making the determination that the two children were incompetent to testify on the basis of interviews with a police officer that were videotaped shortly after one child reported the abuse to her mother. We agree. We vacate the judgment and remand for a proper competency determination. Because the result of the competency determination may not moot defendant's other issues, we also address them; however, as to these issues, we conclude no reversible error occurred.

BACKGROUND.

Defendant was charged based on the statements of two young girls, Liana G., age four, and Stephanie M., age three. Defendant is the father of the girls' babysitter and is known as "Grandpa" to the children. He is seventy-six.

On November 12, 1987, while Liana's mother was giving her a bath, she noticed a red irritation around her daughter's vaginal area. When she was questioned about it, Liana responded that "Grandpa drinks my pee pee sometimes." Further questioning by Liana's mother indicated that such a touching had taken place at the babysitter's house that day. There was also an indication that defendant had done the same to Stephanie. Liana's mother testified that she had called the babysitter's house that morning, when the babysitter had gone to the store. The babysitter's father had answered the phone. Based on this, Liana's parents contacted Stephanie's parents, who woke Stephanie and questioned her. At this time, Stephanie was not particularly responsive, but her mother testified they knew something had been going on. The next day Stephanie again denied she had been touched; she said "no, but Grandpa drinks Liana's pee pee." When asked about games played at the babysitter's, Stephanie said she played the "quiet game" and the "easy game" with Grandpa. She did not explain what these were.

On November 13, both girls were taken for physical examinations. Liana's examination showed symptoms that could be the result of oral-genital sex. Stephanie's examination revealed hymenal tears at three positions, as well as a vaginal opening much larger than is normal, all indicating penetration. The girls were then taken to the police station, where they were interviewed separately by a female officer in plain clothes. The interviews were videotaped.

During the videotaped interview with Liana, which lasted seventeen minutes, the police officer elicited statements concerning criminal sexual contact between Grandpa and three children: Liana, Stephanie, and one other child. Liana repeated what she had told her mother the prior day but described what had happened in more detail and told the officer, without prompting, how she felt about what had happened. Stephanie, on the other hand, was relatively uncommunicative during her interview. She denied she had ever been touched, although she acknowledged she was afraid of Grandpa. Her interview lasted thirteen minutes.

At the preliminary hearing on February 12, 1988, defendant objected to the use of hearsay statements made by the girls and introduced through their parents. The district judge at the preliminary hearing reviewed the videotape and determined that neither child was competent to testify. Therefore, under the rule of State v. Taylor, 103 N.M. 189, 704 P.2d 443 (Ct.App. 1985), the judge considered the children unavailable and admitted the statements made to their parents. Defendant objected to the determination of competency on the basis of the videotaped interviews.

Prior to trial, in late August 1988, defendant moved for a determination of the children's competency. A different district judge reviewed the videotape and determined that the children were incompetent to testify; he then offered defendant an opportunity to produce additional evidence. Defendant declined.

At trial, the children's parents testified concerning out-of-court statements made by the children. Nurse Tulk, who had given the children physical examinations, also testified. The videotaped interviews were replayed. Defendant recorded a standing objection to the introduction of the children's out-of-court statements to their parents, and he objected to the nurse's qualification as an expert. He did not object to the introduction of the videotaped interviews. In fact, he apparently made a tactical decision that the videotaped interviews should be introduced, because the jury would be able to see that both children initially denied anything had happened.

Defendant testified on his own behalf and denied the children's allegations. His daughter, the children's babysitter, also testified and denied that her father had been left alone with the children other than on November 12. She and her father testified that she was absent on November 12 for only twelve minutes. Both mothers testified on rebuttal that defendant, who lived next door to his daughter, often had watched the children for his daughter.

We first address defendant's contention that the district court erred in declaring the children to be incompetent to testify at the preliminary hearing and at trial on the basis of the videotaped interviews with the police officer. Next we address defendant's contention that the district court erred in accepting Nurse Tulk as an expert witness. We address defendant's remaining issues summarily.

THE COMPETENCY DETERMINATIONS.

■ It is within the district or magistrate court's discretion to determine whether a child is competent to testify, and this court will not disturb the court's determination except in a clear case of abuse of discretion. *State v. Ybarra*, 24 N.M. 413, 174 P. 212 (1918); *State v. Manlove*, 79 N.M. 189, 441 P.2d 229 (Ct.App.1968). The state has argued, and we agree, that under the rules of evidence there is no requirement for a separate competency hearing and that the court has broad discretion in qualifying witnesses. SCRA 1986, 11–

104(A). Nevertheless, more was at stake in this case than is typical in determining competency.

The determination of incompetency of the children in this case allowed the state to introduce into evidence incriminating statements the children made to their parents pursuant to a hearsay exception in SCRA 1986, 11–804(B). We first discuss competency and the child witness. Next we discuss the adequacy of the hearings conducted to determine unavailability for the hearsay exception. Finally, we discuss defendant's right of confrontation.

*(A) Competency and the Child Witness.*

■ Competency means that the witness appreciates the duty to speak the truth and possesses the intelligence and the capacities to observe, recollect, and communicate. *State v. Manlove.* In determining whether the children are currently able to be competent witnesses, the district or magistrate court must follow the guidelines we set forth in *Manlove:*

> In each instance the capacity of a child of tender years is to be investigated, and the trial court must determine from inquiries the child's capacities of observation, recollection and communication, and also the child's appreciation or consciousness of a duty to speak the truth. It then lies within the sound discretion of the trial court to determine, from the child's intelligence and consciousness of a duty to be truthful, whether or not the child is competent to testify as a witness.

*Id.* at 192, 441 P.2d at 232.

■ The state suggested to the district court that it was not possible that such young children could be deemed competent to testify. The cases, however, are to the contrary. *See, e.g., State v. Borland,* 57 Wash.App. 7, 786 P.2d 810 (1990) (determination that four-year-old child was a competent witness was supported by her testimony at a competency hearing); *State v. Campbell,* 299 Or. 633, 705 P.2d 694 (1985) (In Banc) (case remanded for trial court's determination of whether three-year-old alleged victim of sexual abuse was competent to testify); *see generally* Annotation,

*Witnesses: Child Competency Statutes,* 60 A.L.R.4th 369 (1988) (discussing decisions recognizing children three and four years old as competent to testify).

### (B) The Adequacy of the Hearings Conducted to Meet the Hearsay Requirement.

In order for the victims to have been unavailable for purposes of the hearsay objection under Rule 11–804(B), the district court must have properly found them incompetent. Although perhaps competency may be determined by means of a psychological evaluation by a qualified expert who is subject to cross-examination, ordinarily, competency should be determined by a voir dire examination. *See State v. Schossow,* 145 Ariz. 504, 703 P.2d 448 (1985) (En Banc). We think the judge making the determination has a good deal of discretion to determine how the examination should be conducted. The goal is a sufficient exploration of the witness's understanding, intelligence, and capacities to observe, recall, and communicate in light of the consequences that the determination will have.

Here, the clear purpose of the videotaped interviews was to gain information about the incidents rather than about the children's maturity, intelligence, and capacity to observe, remember, and relate. The police officer did ask each child what she would say if told that a certain object was a different color. Each child indicated she understood that statement would have been a lie. There were no questions concerning the duty to tell the truth or the ability to recall. Thus, the determination of incompetency was made without adequate inquiry.

In addition, we are concerned about the lapse of time between the videotaped interviews and the subsequent point at which the children's testimony would have been required. The preliminary hearing was three months after the interviews were videotaped; the trial was nine months later. If Liana was on the borderline between incompetency and competency at the time of the interviews, it is not inconceivable that she would have been competent at trial. Further, if any part of Stephanie's difficulty in responding to the police officer stemmed from the trauma of recent events, it is not inconceivable that she would have been better able to communicate at the time of the preliminary hearing.

We conclude that the competency determinations by the district court were made without adequate inquiry into the elements of competency at a meaningful time, and on appeal we cannot determine whether the victims were unavailable at the time the district court allowed the parents to testify about what the children had said. If the children are at present incompetent to testify, we think it is reasonable to assume they were incompetent to testify at the preliminary hearing and subsequently at trial. Under those circumstances, the children's out-of-court statements were admissible under Rule 11–804(B)(2), an exception to the hearsay rule when the out-of-court declarant is unavailable. *See State v. Robinson,* 94 N.M. 693, 616 P.2d 406 (1980). Under that exception, the statements were admissible as statements

> not in response to the instigation of a person engaged in investigating, litigating or settling a claim, which narrates, describes or explains an event or condition recently perceived by the declarant, made in good faith, not in contemplation of pending or anticipated legislation in which he was interested, and while his recollection was clear.

11–804(B)(2). We do not discuss the applicability of Rule 11–804(B)(6), upon which the trial court relied, because another exception so clearly governs. *See generally State v. Beachum,* 83 N.M. 526, 494 P.2d 188 (Ct.App.1972) (a decision of the trial court will be upheld if it is right for any reason). However, even if no violation of the hearsay rule is found, we cannot allow the conviction to stand if admission of the children's out-of-court statements violated defendant's rights under the Confrontation Clause. *State v. Austin,* 104 N.M. 573, 725 P.2d 252 (Ct.App.1985), *modified on other grounds, State v. Post,* 109 N.M. 177, 783 P.2d 487 (Ct.App.1989); *State v. Lunn,* 82

N.M. 526, 484 P.2d 368 (Ct.App.1971). Thus, we next discuss defendant's right of confrontation.

### (C) Defendant's Right of Confrontation.

■ Even hearsay statements that satisfy recognized exceptions to the hearsay rule may still violate the Confrontation Clause. *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *State v. Martinez,* 99 N.M. 48, 653 P.2d 879 (Ct.App.1982). Nevertheless, if a declarant is unavailable and the hearsay statement is clothed with sufficient indicia of reliability, the Confrontation Clause is satisfied. *See State v. Earnest,* 106 N.M. 411, 744 P.2d 539, *cert. denied,* 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987).

■ Our discussion of unavailability above applies equally to confrontation concerns. We held in *Austin* that well-established hearsay exceptions are presumptively reliable. Although the hearsay exception found in Rule 11–804(B)(2) may not be as firmly rooted in the general law of the United States as contemplated by *Austin,* see 4 J. Weinstein & M. Berger, *Weinstein's Evidence* Section 804(b)(5)[04] (1988), there is nothing in the circumstances surrounding the statements at issue in this case indicating any unreliability whatsoever. The statements were clear, unambiguous, and in language and acts consistent with their ages. Liana's first statement was spontaneous and not in response to questioning. In each case, the child identified only one perpetrator.

More importantly, defendant does not argue that the exception found in Rule 11–804(B)(2) is not a well-established hearsay exception and does not argue that the statements do not bear adequate indicia of reliability. Rather, he appears to concede that, if the statements fall within a hearsay exception and if the children are unavailable, his Confrontation Clause argument is without merit. Under these circumstances, we will not reach issues defendant does not argue. *See State v. Aragon,* 109 N.M. 632, 788 P.2d 932 (Ct.App.1990) (issues must be adequately argued and supported by authority in the brief or they will be deemed abandoned).

### (D) The Appropriate Remedy.

Therefore, we remand to the district court for proceedings not inconsistent with this opinion. We believe the appropriate remedy in this case is to remand for a competency hearing. If the children are at present incompetent to testify, we think it is reasonable to assume they were incompetent to testify at the preliminary hearing and subsequently at trial. If on remand the trial court determines that both children are incompetent, the convictions will stand. If the court determines that either child is competent, or if it is not possible to hold a competency hearing within a reasonable time, defendant will be entitled to the new trial requested as relief in his brief.

Although *Mascarenas v. State,* 80 N.M. 537, 458 P.2d 789 (1969), suggests that the effect of denying an accused his confrontation rights at a preliminary hearing is that the district court is without jurisdiction to proceed to trial, the right to a preliminary hearing may be waived. *State v. Vaughn,* 74 N.M. 365, 393 P.2d 711 (1964) (cited with approval in *Mascarenas* ). Because defendant's brief does not suggest that a new preliminary hearing is necessary and because this case must be remanded to the district court for further proceedings in any event, we believe it is premature to comment on the full extent of relief to which defendant may be entitled if the court finds both children or either one of them to be competent.

### NURSE TULK'S QUALIFICATION AS AN EXPERT.

Defendant argues that the district court erred in recognizing Nurse Tulk as an expert in the field of child sexual abuse. We disagree.

■ SCRA 1986, 11–702 provides that "a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." The question of whether witnesses qualify as experts lies within the sound discretion of the district court. *Madrid v. University of Califor-*

*nia,* 105 N.M. 715, 737 P.2d 74 (1987). This court will not disturb a district court's ruling unless we find an abuse of discretion. An abuse of discretion " 'is an erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances.' " *State v. Hargrove,* 81 N.M. 145, 147, 464 P.2d 564, 566 (Ct.App.1970) (quoting R. Bowers, *Judicial Discretion of Trial Courts* § 12 (1931)). In *Madrid,* the supreme court held that the rule allowed an expert witness to be "qualified on foundations other than licensure." *Id.* 105 N.M. at 717, 737 P.2d at 76. This state has no licensing requirements for specialty in the area of child sexual abuse.

■ Nurse Tulk is a certified family nurse practitioner who has completed a post-graduate program. NMSA 1978, § 61–3–3(H) (Repl.Pamp.1989). She completed a specialized training program in Denver with a leading physician specializing in the field of child sexual abuse. During this training she examined one hundred possible victims. She was supervised by the physician, who agreed with her diagnosis in every case. Nurse Tulk was employed by a group of pediatricians and was considered by the physicians as the "in house" expert in the area. Between December 1987 and July 1988, she examined one hundred children for alleged sexual abuse. In addition to her practical experience, Nurse Tulk testified that she keeps current with professional articles on the subject.

We see no need for Nurse Tulk to have been a physician or to have her diagnoses confirmed by a physician in order for her to qualify as an expert witness in this area. As the supreme court noted in *Madrid,* the rule allows the district court to consider other factors which qualify a person as an expert in order to give a medical opinion. We conclude the district court did not abuse its discretion in accepting her as an expert witness.

## ISSUES ANSWERED SUMMARILY.

■ Defendant further argues that the district court erred by refusing to allow his expert witness to examine the children. He acknowledges that his motion for such an examination was untimely. Defendant's own witness admitted at trial that an examination after so much time had passed would have served no purpose. We conclude that any error in denying defendant's motion was harmless. *State v. Moore,* 94 N.M. 503, 612 P.2d 1314 (1980).

■ Finally, defendant argues that the district court erred in refusing to prohibit Nurse Tulk from testifying about the hymenal tears found on one of the victims. He contends this testimony was based on a theory of penetration for which he had no notice and which prejudiced him. We cannot fathom the basis for such an argument. The information charged him with penetration of one of the victims. The purpose of an information is to furnish the accused with a description of the charge so that he may defend himself. *State v. Martin,* 94 N.M. 251, 609 P.2d 333 (Ct.App.1980). Therefore, he cannot say that he did not have notice of the charge of digital penetration against him or that the testimony in question prejudiced him.

Defendant also seems to argue that when Nurse Tulk testified that her findings were consistent with digital penetration, her testimony was irrelevant because it was totally inconsistent with the statements of the victims. The district court has the discretion to determine relevancy. *Wright v. Brem,* 81 N.M. 410, 467 P.2d 736 (Ct.App.1970). Here, physical evidence consistent with digital penetration is not inconsistent with allegations of sexual contact; rather, the physical evidence of sexual abuse supplemented the statements of the children. The district court did not abuse its discretion in allowing such evidence.

## CONCLUSION.

The judgment is vacated. The case is remanded for a competency hearing in ac-

cordance with the instructions set forth in this opinion. In the event the district court determines that either child is competent to testify, or if it is not possible to hold a competency hearing within a reasonable time, defendant's convictions are reversed. If the district court determines that both children are incompetent to testify, defendant's convictions are affirmed.

IT IS SO ORDERED.

APODACA and HARTZ, JJ., concur.