This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                            **NO. 29,765**

**GILBERT MARTIN LOPEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Robert S. Orlik, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

**INTRODUCTION**

Defendant Gilbert Martin Lopez appeals his convictions for burglary, larceny (over $100), and criminal damage to property (under $1000). This Court filed a calendar notice on September 24, 2009, proposing to affirm Defendant's convictions. Defendant filed a memorandum in opposition to proposed summary affirmance on February 25, 2010, which we have duly considered. We affirm Defendant's convictions.

**FAILURE TO EXCUSE JUROR OR DECLARE MISTRIAL**

Defendant raises two issues concerning a juror at his trial, Raymond Medrow. First, during a break in Defendant's trial, a juror learned that his own home had been burglarized. [MIO 3] That juror was excused, but he had informed juror Medrow of the incident. [Id.] Defendant asserts that Medrow should also have been excused and a mistrial declared. [Id.]

"We review a trial court's denial of a motion for mistrial under an abuse of discretion standard." *State v. Gonzales*, 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131. An abuse of discretion occurs "when the lower court's decision is clearly against the logic and effect of the facts and circumstances of the case." *State v. Sosa*, 1997-NMSC-032, ¶ 7, 123 N.M. 564, 943 P.2d 1017 (internal quotation marks and citation omitted). "[W]e will not find an abuse of discretion unless we can characterize [the district court's determination] as clearly untenable or not justified by

reason." *Id.* (second alteration in original) (internal quotation marks and citation omitted). A claim of alleged juror bias has merit if the excused juror's comment "unfairly affected the jury's deliberative process and resulted in an unfair jury." *State v. Gardner*, 2003-NMCA-107, ¶ 12, 134 N.M. 294, 76 P.3d 47 (internal quotation marks and citation omitted). "Communication of specific knowledge from a particular juror to others involves extraneous information." *State v. Sacoman*, 107 N.M. 588, 590, 762 P.2d 250, 252 (1988). "[E]xtraneous information creates a presumption of prejudice that may be rebutted by showing that no prejudice actually occurred." *Id.* at 591, 762 P.2d at 253. "A new trial is required if [a party's] right to a fair trial was prejudiced by jury misbehavior." *Goodloe v. Bookout*, 1999-NMCA-061, ¶ 19, 127 N.M. 327, 980 P.2d 652.

We note several factors that lead us to conclude that the district court did not abuse its discretion in denying a motion for mistrial. First, we conclude that the excused juror's comment did not constitute "extraneous information" as that term is used in the context of jury deliberations. The comment did not relate to Defendant's case or suggest that he was guilty, nor did it involve any claim by the excused juror that he had special knowledge or had conducted his own investigation of Defendant's case. Further, the burglary that the excused juror reported to Medrow did not directly affect Medrow's personal interests. Finally, there is no indication that the excused

3

juror mentioned the burglary to Medrow for the purpose of influencing Medrow's participation in deliberations.

The district court questioned Medrow, and he stated that the information would not influence his decision. To conclude that the comment "unfairly affected the jury's deliberative process" would require this Court to speculate not only that the comment had such an effect on Medrow that he was thereafter incapable of presuming Defendant innocent and impartially weighing the evidence, but also that he deceived the district court concerning his ability to be fair. We conclude that the district court did not abuse its discretion in these circumstances.

Second, Defendant argues that the district court erred in not allowing a new trial when newly discovered evidence of juror taint was brought to light. Defendant's motion for new trial asserts that juror Medrow failed to disclose during voir dire that he was aware of Defendant's criminal history and was acquainted with Defendant's wife, Serena Lopez. [RP 162-65] The motion was supported by Serena Lopez's affidavit, in which she avers that Medrow was a regular customer at a KC Express while she worked there in 2007, and that she had confided in Medrow regarding Defendant's criminal history. She also states that Medrow had met Defendant on at least one occasion. [RP 164]

"A trial court may, in its discretion, set aside a jury verdict where there is

4

evidence that a juror failed to truthfully respond to sufficient and well-directed questioning on voir dire concerning bias or prejudice of the juror and that prejudice resulted." *Rios v. Danuser Mach. Co.*, 110 N.M. 87, 91, 792 P.2d 419, 423 (Ct. App. 1990).

The district court conducted a thorough hearing on Defendant's motion for new trial, hearing testimony from Defendant, Serena Lopez, another worker at KC Express, juror Medrow, and jury foreperson Dwight Schuller. [RP 175-79] We first point out that even if all the facts of Serena Lopez's affidavit are taken as true, it is possible that Medrow simply did not recognize Defendant, especially given that he had encountered Serena Lopez over a year earlier and might have met Defendant only once. [RP 164] At the hearing, Medrow testified that he never talked with Serena Lopez about Defendant's criminal history. [RP 177] The State asked Medrow whether he had any memory of seeing Defendant before the day of trial. [Id.] Although the tape log does not indicate how Medrow answered, the district court found that Medrow had no recollection of Defendant. [RP 180] The jury foreperson testified that there were no discussions of prior offenses during deliberations. [Id.] Thus, there was evidence before the district court that Medrow had not been aware of Defendant's criminal history, or that, if he was told of it, he did not associate it with Defendant. In these circumstances, we affirm the district court.

**SUFFICIENCY OF EVIDENCE AND COMPETENCY OF WITNESSES**

Defendant argues that there was insufficient evidence to convict him based on the testimony of a minor and a mentally challenged individual, and that the court should not have allowed the mentally challenged individual to testify.

> Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt.

*State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted). On appeal, the appellate court views the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict. *State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994).

As applied to the present circumstances, the essential elements of burglary, larceny, and criminal damage to property are as follows. The offense of burglary occurs when a person "enters a dwelling house with intent to commit any felony or theft therein." NMSA 1978, § 30-16-3(A) (1971). "Larceny consists of the stealing of anything of value that belongs to another." NMSA 1978, § 30-16-1(A) (2006). "Criminal damage to property consists of intentionally damaging any real or personal property of another without the consent of the owner of the property." NMSA 1978, § 30-15-1 (1963).

Given the absence of any description of the evidence in the docketing statement, our calendar notice presumed that there was evidence supporting the basic facts as described in the original offense report, and that Defendant's issue was more concerned with the competence of two of the witnesses providing the evidence. [DS 3-4] Defendant's memorandum in opposition does not indicate that our presumption was incorrect. The offense report states that Defendant "broke into the house and stole[] money and pills," that he "broke into the master bedroom," and that he "entered without permission." [DS 3] These facts cover all the elements of the offenses for which Defendant was convicted, assuming that the damage to property occurred in the course of breaking in.

As to whether the mentally challenged and minor witnesses could testify in the present case, our starting point is Rule 11-601 NMRA: "Every person is competent to be a witness except as otherwise provided in these rules." "Under Rule 601, the trial court's role is to insure that [w]itnesses . . . meet a minimum standard regarding the matters on which they will testify, the minimum necessary to permit any reasonable person to put any credence in their testimony." *State v. Hueglin*, 2000-NMCA-106, ¶ 22, 130 N.M. 54, 16 P.3d 1113 (alterations in original) (internal quotation marks and citation omitted). "To be competent, a witness is required to have a basic understanding of the difference between telling the truth and lying,

coupled with an awareness that lying is wrong and may result in some sort of punishment." *Id.* ¶ 24 (internal quotation marks and citation omitted). "In each instance the capacity of a child of tender years is to be investigated, and the trial court must determine from inquiries the child's capacities of observation, recollection and communication, and also the child's appreciation or consciousness of a duty to speak the truth." *State v. Macias*, 110 N.M. 246, 249, 794 P.2d 389, 392 (Ct. App. 1990) (internal quotation marks and citation omitted). We review for abuse of discretion. *Hueglin*, 2000-NMCA-106, ¶¶ 21, 23.

The district court held a hearing on Defendant's motion to determine the competency of Elias Lopez, who was alleged to be mentally retarded. [RP 35-36, 64-65] While the tape log does not indicate all of his answers, it indicates among other things that he graduated from high school, knew what day it was, and was questioned about what is truth and what is a lie. [RP 64] At trial, Elias Lopez was again asked about the difference between truth and lying, and correctly identified his siblings. [RP 138-40] Our review of the substance of his trial testimony, while limited by the condensed nature of the tape log, does not suggest that he had any difficulty in understanding the questions or in responding comprehensibly. In these circumstances, we affirm the district court.

The minor witness at issue was K.L., age ten. [RP 145-46; MIO 9] The State

asked her about the difference between truth and lying. [RP 145-46] As with Elias Lopez, we do not see anything in the tape log suggesting that she failed to understand questions or to answer responsively, nor does Defendant's memorandum in opposition inform us of any specific instances suggesting incompetency. We affirm the district court's allowance of K.L.'s testimony.

For the reasons stated above, we affirm the district court on all issues.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**ROBERT E. ROBLES, Judge**